UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEISHA A. JONES,

                            Plaintiff,

            -against-

CITY OF NEW YORK, ET AL.,

                            Defendants.

22-CV-7243 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated her rights. Named as Defendants are the City of New York, the New York City Comptroller, New York City Department of Social Services (DSS), New York City Department of Housing Preservation and Development (HPD), Urban Pathways, Inc., Help USA Inc., Westhab, Inc., Institute for Community Living, Inc. (ICL), and ICL Program Director Tamara Bryant. By order dated August 25, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead a claim under the Fair Housing Act.

### STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Keisha Jones brings this action "to enforce approved reasonable accommodations [RA] and to seek relief from unlawful actions and inactions resulting in the need to seek emergency shelter in June 2020 during the pandemic and civil unrest (curfew imposed) in NYC." (ECF 2, at 1.) The following allegations are taken from the complaint. In 2016, Plaintiff sought and obtained shelter in a "drop-in" center operated by Urban Pathways.

Upon intake, Plaintiff was "stunned" when she was denied copies of the "mountain of documents" she was required to sign. (*Id.* at 5.) Furthermore, Urban Pathways "intentionally and willfully" failed to disclose that the drop-in center was funded by DSS, and "[a]s a direct result of fraud," Plaintiff "unknowingly entered the dangerous NYC shelter system." (*Id.*)

Plaintiff left the Urban Pathways drop-in center in November 2017. She filed a complaint with the New York City Public Advocate, but "it was clear that it was intentionally being ignored by DSS (retaliation)." (*Id.* at 6.) Plaintiff asserts that "[p]artial information demanded and received from" ICL in 2022 shows that Urban Pathways "falsified records regarding [Plaintiff's] health and defamed [her]." (*Id.*)

In June 2020, Plaintiff sought assistance from the disability office within DSS. She "was advised to submit a reasonable accommodation request" due to her unspecified "pre-existing medical condition." (*Id.*) The request was approved "days before" Plaintiff went to an intake/assessment shelter operated by Help USA. (*Id.*) Plaintiff maintains that her "RAs" were "in the system" at that time, but she was not "accommodated or given printed copies." (*Id.*) Help USA "ignored Plaintiff's approved RAs from June 12, 2022, to June 18, 2022. (*Id.* at 7.) Specifically, "[t]here was no food on-site for [Plaintiff] to eat," which she alleges ignored her "dietary RA." (*Id.*) On June 19, 2020, Plaintiff was "thrown out into the street" for questioning a transfer to another residence. (*Id.*) The Help USA employee could not tell her the address of where she was going or if the new location "met the RA (private room with an attached private bathroom)." (*Id.*)

On June 22, 2020, Plaintiff arrived at a temporary hotel shelter site operated by Westhab. The room she was provided was "consistent with a well maintained hotel for business and leisure

travel, but it did not meet the needs provided for in other approved RAs (location, dietary needs, bed rest)." (*Id.* at 8.)

  While Plaintiff was at Westhab, "security" staff unlocked her door and entered her room to conduct "headcounts" or "wellness checks." (*Id.*) Plaintiff submitted grievances about the wellness checks, but the Westhab Program Director told her that the checks are "DHS policy" and offered to transfer her to a "congregate shelter" where such checks are not required, but Plaintiff maintains that such a transfer would "violate [her] RA" and "jeopardize her health." (*Id.* at 9.) Plaintiff asserts that the wellness checks are "dangerous, an invasion of privacy," and violate the Health Insurance Portability and Accountability Act (HIPAA) and "other laws." (*Id.*) Plaintiff was given a "DHS Form 12A," which indicated that she violated "1LP," explained her rights to an "agency conference" or "fair hearing," and stated that "'failure to comply' could result in 'discontinuance' of 'temporary housing.'"[1] (*Id.* at 8.) Plaintiff asserts that the Form 12A was "deficient, false, threatening and perhaps unlawful." (*Id.*)

  In December 2020, Westhab's director of social services advised Plaintiff to apply for apartments using HPD's "Housing Connect" online application process. In January 2021, HPD emailed Plaintiff to inform her that her "lottery number was called" and that she "had days to act." (*Id.* at 11.) Plaintiff responded to the email with questions about a "reasonable accommodation" and requested to complete the process by mail rather than online. (*Id.*) Plaintiff's questions were not answered, and in February 2021, she received an email stating that her application was rejected, without any additional information. Plaintiff tried contacting DSS's disability office and HPD but did not receive "a reply or a remedy." (*Id.* at 12.) Plaintiff

---

[1] The complaint provides no further explanation of "DHS Form 12A" or "1LP."

complained to the NYC Human Rights Commission, which but there was nothing they could do because the issue did "not fit precisely within their purview." (*Id.*)

In September 2021, Plaintiff received notice that she was being transferred to another location, which was operated by Defendant ICL, and again she "was forced into another 'intake' process" and denied copies of her intake forms. (*Id.*) ICL violated Plaintiff's "approved RAs also (dietary need, bed rest)" and also conducted wellness checks and "illegal searches" of Plaintiff's locker and groceries. (*Id.*) Plaintiff states that her interactions with ICL management were

> unsatisfactory from the beginning and they proceeded to discriminate and retaliate against me by falsifying records in computer systems and paper files (dark 3 ring binder maintained and the same was done at the drop in center), denying my requests for housing information and scheduling meetings without asking for my availability so they can claim that I am being 'non compliant' or missed a meeting.

(*Id.* at 13.)

Between February 2022 and March 2022, ICL staff "engaged in unethical behavior by pursuing me continuously for almost 30 days to complete a 'psych eval' for 'housing' after I clearly stated the first time (2/14/2022) that I did not apply for nor am I eligible for 'supportive housing.'" (*Id.*) Furthermore, a social worker knocked on Plaintiff's door and asked her "very sensitive personal questions in the hallway," which Plaintiff believes "was a form of profiling and practicing medicine without a license." (*Id.* at 14.)

Plaintiff seeks monetary damages as well as various forms of injunctive relief.

On August 21, 2020, Plaintiff filed an action in this court against DSS Commissioner Steven Banks, "Nonprofit Corporation 1-5," and "DSS Employee 1-5," alleging that the defendants violated her federal constitutional rights between June 2019 and August 2020. *See Jones v. Banks*, ECF 1:20-CV-6788, 2 (S.D.N.Y. January 7, 2021). In the complaint in that action, Plaintiff alleged many of the same facts as she does in the current complaint regarding the

conditions of the emergency shelters, including wellness checks conducted by shelter staff, a lack of "clean, fresh, local food," denial of her reasonable accommodations, and agency staff falsely accusing her of missing appointments and failing to provide her with copies of her intake materials. By order dated August 26, 2020, Judge Louis L. Stanton dismissed the complaint for failure to state a claim on which relief may be granted, but granted Plaintiff leave to replead her claims under the Fair Housing Act. ECF 1:20-CV-6788, 5. The order specifically directed Plaintiff to allege more facts regarding her disability and the nature of reasonable accommodations she requested.

Plaintiff filed an amended complaint in which she added new defendants including the City of New York, Urban Pathways, and Help USA, Inc. The amended complaint again included many of the same allegations asserted here, including that Plaintiff was denied copies of forms that she filled out, required to submit to physical and psychological examinations, subjected to "headcounts" and "wellness checks," denied her reasonable accommodations, and threatened to be transferred to a different facility. By order dated January 1, 2021, Judge Stanton dismissed Plaintiff's previously asserted claims for the reasons stated in his earlier order and dismissed her new claims for failure to state a claim on which relief may be granted. ECF 1:20-CV-6788, 11.[2]

## DISCUSSION

### A.    Claims previously asserted

To the extent Plaintiff is asserting claims against the City of New York, Urban Pathways, and Help USA that have previously been dismissed in *Banks*, No. 20-CV-6788, the Court dismisses those claims under the doctrine of claim preclusion. Under the doctrine of claim

---

[2] The docket indicates that the order of dismissal and judgment were returned to the court as undeliverable and unable to forward.

preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims

or defenses that were or could have been raised in an earlier case in which the same parties were

involved if that case resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131

(1979). Claim preclusion "prevents parties from raising issues that could have been raised and

decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc.*

*v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594, 206 L. Ed. 2d 893 (2020). If a litigant files

a new suit and "advances the same claim as an earlier suit between the same parties, the earlier

suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were

previously available to the parties, regardless of whether they were asserted or determined in the

prior proceeding.'" *Id.* (quoting *Brown*, 442 U.S. at 131). Claims are treated as the same if they

"arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga*

*Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees*, 140 S. Ct. at

1595 (citations and internal quotation marks omitted)).

Claim preclusion generally applies if "(1) the prior decision was a final judgment on the

merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction,

and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d

Cir. 2019) (citation and internal quotation marks omitted).

The elements of claim preclusion are satisfied here with respect to Plaintiff's claims

against the City of New York, Urban Pathways, and Help USA arising before Plaintiff filed the

amended complaint in *Banks* on November 16, 2020. The court's decision in *Banks* was a final

judgment on the merits. *See Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d

581, 583 (2d Cir. 2016) (a "dismissal for failure to state a claim operates as 'a final judgment on

the merits and thus has *res judicata* effects") (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d

130, 134 (2d Cir. 2009)). In both actions, Plaintiff asserts Section 1983 and FHA claims against

the City of New York, Urban Pathways, and Help USA arising from Plaintiff's transactions with

those defendants between 2017 and November 2020, and this court was a court of competent

jurisdiction. The Court therefore dismisses Plaintiff's pre-November 2020 claims against these

defendants under the doctrine of claim preclusion.[3]

**B.     Claims under Section 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right

secured by the Constitution or laws of the United States was violated, and (2) the right was

violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487

U.S. 42, 48-49 (1988).

**1.     Private defendants**

The Court dismisses Plaintiff's Section 1983 claims against Urban Pathways, Help USA,

Westhab, ICL, and Tamara Bryant. A claim for relief under Section 1983 must allege facts

showing that each defendant acted under the color of a state "statute, ordinance, regulation,

custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the

statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v.

Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of*

---

[3] Although claim preclusion is an affirmative defense to be pleaded in a defendant's
answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise the issue. *See, e.g.*,
*Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's dismissal on
grounds of issue preclusion even though defendant failed to plead that defense, and noting that
"principles of preclusion involve" not only "the rights and interests of the parties," but also
"important interests of the public and the courts in avoiding repetitive litigation and potentially
inconsistent decisions"); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (affirming *sua sponte*
application of collateral estoppel in motion for summary judgment); *Salahuddin v. Jones*, 992
F.2d 447, 449 (2d Cir. 1993) ("The failure of a defendant to raise *res judicata* in [an] answer
does not deprive a court of the power to dismiss a claim on that ground.").

*Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

The activity of a private entity can be attributed to the state in three situations: (1) the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the "public function" test). *See Fabricant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In analyzing whether a private entity acts under color of state law for purposes of Section 1983, the district court begins "by identifying the specific conduct of which the plaintiff complaints," rather than the general characteristics of the entity. *Id.* Providing housing is not a public function because it is not the excusive province of the state. *See, e.g.*, *George v. Pathways to Housing, Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.'"). The fact that an entity receives public funds does not turn private action into state action. *See Rendell-Baker*, 457 U.S. at 840.

Defendants Urban Pathways, Help USA, Westhab, ICL, and Tamara Bryant are private parties who are not alleged to work for any state or other government body. Moreover, Plaintiff has not alleged any facts suggesting that the actions of these defendants are attributable to the government. The Court therefore dismisses Plaintiff's Section 1983 claims against these defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B)(ii). Should there be additional facts to support a Section 1983 claim against these defendants, Plaintiff may assert them in an amended complaint.

### 2.   DSS and HPD

The Court also dismisses Plaintiff's Section 1983 claims against DSS and HPD because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's Section 1983 claims against DSS and HPD for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.   Shelter conditions

Any claims Plaintiff is asserting based on shelter conditions must be dismissed because there is no federal constitutional right to housing, including a shelter system. In *Lindsey v. Normet*, the Supreme Court held that there is no "constitutional guarantee of access to dwellings of a particular quality." 405 U.S. 56, 74 (1972). Furthermore, the government has no "obligation to provide adequate housing." *Richardson v. City of New York*, No. 12-CV-2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y Apr. 17, 2012) (internal quotation marks and citation omitted). Plaintiff's allegations about being sent to an undesirable shelter do not state a federal claim because there is no due process property right to placement in a particular type of shelter under federal law or New York law. *See Lindsey*, 405 U.S. at 74 ("We are unable to perceive in [the Constitution] any constitutional guarantee of access to dwellings of a particular quality . . . [a]bsent constitutional mandate, the assurance of adequate housing and the definition of

landlord-tenant relationships are legislative, not judicial, functions"); *Jenkins v. New York City Dep't of Homeless Services*, 643 F. Supp. 2d 507, 512 (S.D.N.Y 2009) ("The Plaintiff has no claim for deprivation of property without due process because he does not have a property right to placement in a particular type of shelter under New York law."). The Court therefore dismisses Plaintiff's Section 1983 claims arising from her shelter conditions and her placement in a particular shelter for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.    The City of New York

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Because Plaintiff has failed to plead an underlying constitutional violation, she has also failed to state a municipal liability claim against the City of New York. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (absent an underlying constitutional violation, there can be

no municipal liability under *Monell*). Even if Plaintiff had sufficiently stated a constitutional

violation, she still fails to state a municipal liability claim against the City. None of Plaintiff's

allegations suggests that the City has a policy, practice, or custom that violated her rights. She

describes only her own experiences in navigating the City's shelter system. The Court therefore

dismisses Plaintiff's Section 1983 claims against the City of New York of failure to state a claim

on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

    **5.**      **Claims against the New York City Comptroller**

    Plaintiff's sole allegation against the Comptroller is that "[d]uring the pandemic, [the

Comptroller] ignored my phone calls and subsequent complaint filed in late 2021 with the NYC

Public Advocate regarding 50-h hearing vendors/law firms." (ECF 2, at 2.) To the extent

Plaintiff is attempting to assert a claim that the Comptroller failed to investigate or respond to her

complaint, her allegations fail to state a claim because there is no federal constitutional right to

an investigation by government officials. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,

489 U.S. 189, 195-96 (1989) (the Due Process Clause generally confers no affirmative right to

governmental aid); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (holding

that there is "no constitutional right to an investigation by government officials") (citation

omitted).[4] The Court therefore dismisses Plaintiff's Section 1983 claims against the Comptroller

for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] The Second Circuit has recognized two exceptions to the general rule that the State has no duty to investigate or protect individuals: First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 200. Second, the government may assume some obligation when it affirmatively creates or increases the danger. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993). Neither exception applies here.

C.      **Claims under the FHA**

Plaintiff may be attempting to assert claims under the Fair Housing Act (FHA), 42 U.S.C.

§ 3601, et seq. The FHA makes it unlawful to "discriminate in the . . . rental [of], or to otherwise

make unavailable or deny, a dwelling to any . . . renter because of" the individual's disability. 42

U.S.C. § 3604(f)(1)(A). Under the FHA, disability discrimination includes a refusal to make

"reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford such person equal opportunity to use and enjoy a

dwelling." 42 U.S.C. § 3604(f)(3)(B).

To state a claim under the FHA that a defendant failed to provide reasonable

accommodations, a plaintiff must allege that (1) she had a disability, (2) the defendant knew of

or should have known of the disability, (3) the requested accommodation "was likely necessary

to afford the [disabled] person an equal opportunity to use and enjoy the dwelling," (4) the

accommodation requested was reasonable, and (5) "the defendant refused to make the requested

accommodation." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014). The FHA

defines a disability as "a physical or mental impairment which substantially limits one or

more . . . major life activities." 42 U.S.C. §§ 3602(h)(1), 3604(f). Under United States

Department of Housing and Urban Development regulations, "[m]ajor life activities" are defined

as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing,

speaking, breathing, learning and working." 24 C.F.R. § 100.201(b); *see Olsen*, 759 F.3d at 152

(further explaining FHA's "handicap" definition under 24 C.F.R. § 100.201(b)).

Here, Plaintiff alleges that various defendants violated or threatened to violate her

"reasonable accommodations," or "RAs," but Plaintiff fails to identify the nature of her disability

or specify the type of reasonable accommodation she requested or how such reasonable

accommodation was necessary for her to have an equal opportunity to use and enjoy the dwelling

or shelter. The Court therefore grants Plaintiff leave to amend her complaint to provide more facts in support of a claim under the FHA.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the FHA, the Court grants Plaintiff 30 days' leave to amend her complaint to detail her claims. In Plaintiff believes she has additional facts to support a Section 1983 claim, she may also assert them in the amended complaint.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

 a) the names and titles of all relevant people;

 b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

 c) a description of the injuries Plaintiff suffered; and

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated her federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff 30 days' leave to replead her claims in an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 30 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-7243 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Clerk of Court is instructed to hold this matter open on the docket until a civil judgment is entered.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates

good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    October 17, 2022
          New York, New York

                         /s/ Laura Taylor Swain
                             LAURA TAYLOR SWAIN
                       Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____
_____
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

\_\_\_\_ Civ. _____ ( \_\_\_\_ )

**AMENDED
COMPLAINT**

Jury Trial:  ☐ Yes     ☐ No
(check one)

I.      **Parties in this complaint:**

A.      List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff      Name _____
                Street Address _____
                County, City _____
                State & Zip Code _____
                Telephone Number _____

B.      List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant  No. 1    Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____


Defendant  No. 2    Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____


Defendant  No. 3    Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____


Defendant  No. 4    Name _____

Street Address _____

County, City _____

State & Zip Code _____

Telephone Number _____


## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction.  Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal Questions              ☐ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

_____

_____

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

_____

### III.    Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.    Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? _____

_____

B.    What date and approximate time did the events giving rise to your claim(s) occur? _____

_____
_____

C.    Facts: _____
_____

```
┌──────────────┐
│ What         │
│ happened     │
│ to you?      │
└──────────────┘
```
_____
_____
_____
_____

```
┌──────────────┐
│ Who did      │
│ what?        │
└──────────────┘
```
_____
_____

_____

```
┌──────────────┐
│ Was anyone   │
│ else         │
│ involved?    │
└──────────────┘
```
_____
_____

```
┌──────────────┐
│ Who else     │
│ saw what     │
│ happened?    │
└──────────────┘
```
_____
_____
_____
_____

### IV.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____
_____
_____
_____
_____
_____
_____

**V.      Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are

seeking, and the basis for such compensation. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

                    Signature of Plaintiff      _____

                    Mailing Address           _____

                                            _____

                                            _____

                    Telephone Number       _____

                    Fax Number *(if you have one)*    _____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners
             must also provide their inmate numbers, present place of confinement, and address.


For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering
this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for
the Southern District of New York.


                    Signature of Plaintiff:    _____

                    Inmate Number            _____